UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NORTHVIEW CHRISTIAN CHURCH, INC.<br><br>            Plaintiff,<br><br>          v.<br><br>J & J GROUP, INC.; JASON SOUTH; MECHANICAL SYSTEM SOLUTIONS GROUP PLLC d/b/a ENGINEERING SYSTEM SOLUTIONS; ENGINEERING STRUCTURAL DETAILING, LLC d/b/a ENGINEERING SYSTEM SOLUTIONS; MS2EE, PLLC d/b/a ENGINEERING SYSTEM SOLUTIONS; and E&D COMPANY, PLLC d/b/a ENGINEERING SYSTEM SOLUTIONS<br><br>            Defendants. | Case No. 4:10-CV-382-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Defendants' Motion to Dismiss Northview's Claims of Engineering Malpractice (Dkt. 40), Motion for More Definite Statement (Dkt. 38), and Motion to Strike the Declaration of Pete Pierce, Jr. (Dkt. 50). Plaintiff Northview Christian Church seeks damages from Defendants for breach of contract and engineering

malpractice. Defendants move to dismiss the engineering malpractice claims under the economic loss doctrine. In addition, Defendants move for a more definite statement of the claims and allegations against each of them from Northview. The Court will deny the motions for the reasons expressed below.

## BACKGROUND

Plaintiff Northview Christian Church, a large church headquartered in Dothan, Alabama, contracted with Monolithic Constructors, Incorporated, a Texas company, to build two dome-shaped buildings for their expanding church campus. *Compl.* ¶¶ 35-36. Monolithic and other entities worked with LPDJ Architects, PLLC, a Utah architectural company, which subcontracted with Defendant engineering companies from Idaho to work on the project. *Id.* ¶¶ 1, 34.

The Defendant engineers consist of J&J Group, Inc. and Jason Smith in his personal capacity, Mechanical System Solutions Group, MS2EE PLLC , E&D Company PLLC, and Engineering Structural Detailing LLC. Aside from J&J Group and Jason South, all of these entities conduct business under the name of Engineering System Solutions. And aside from South, a citizen of Idaho, all are Idaho corporations. *Compl.* ¶ 25-29.

Northview alleges that the dome builders held themselves out as a single company that designed and constructed domes. *Compl.* ¶ 39. At some point, the South brothers, as part of South's Incorporated, patented a way of constructing domes. *Id.* ¶ 41. The company then split into two entities, South and Monolithic. *Id.* ¶ 42. Monolithic moved

to Texas, and South remained in Idaho. *Id.* LPDJ, based in Utah, is the "architectural wing" of Monolithic. *Id.* ¶ 44. Northview refers to Monolithic, South, and LPDJ together as the "dome builders." *Id.* at 2.

In January of 2005, Northview contacted the dome builders about the possibility of building the domes. *Compl.* ¶ 47. The dome builders conducted a feasibility study, and presented Northview with a description of the project and a detailed budget. *Id.* ¶ 53. There is no industry-standard contract document between Northview and the dome builders – the agreement was formed around July 1, 2005, when Northview accepted the terms of the feasibility study document, prepared by Monolithic, which contained the essentials of the project and cost for each portion of the project. *Id.* ¶¶ 54-56.

Around the time the agreement was formed, the dome builders made representations about the durability and quality of the domes, especially regarding the domes' ability to withstand severe weather. *Compl.* ¶ 48. Relying on the representations, Northview issued a press release in April 2008 about the durability of the structures, including the ability of the domes to withstand a Category 5 tornado. *Id.* ¶ 51. Newspaper articles about the project also included the information from the press release about the durability of the domes. *Id.* ¶ 50.

Around February 1, 2006, the dome builders asked Northview to sign a document that outlined the responsibilities of Monolithic and LPDJ. *Compl.* ¶ 55. In April 2007, dome builders asked Northview to sign a document that outlined certain responsibilities for South. *Id.* Northview was instructed to send payments to South and LPDJ directly.

*Id.* Aside from the cost of the feasibility study – around $6000 -- Northview did not make any payments directly to Monolithic. *Id.* ¶ 56.

South's construction team arrived around September 2007 and finished construction in June 2008. *Compl.* ¶¶ 34, 59. Work on the interior then began by other contractors. *Id.* ¶¶ 34, 60. Northview held its first services in the domes on December 31, 2008. *Id.* ¶ 60.

According to the Complaint, the domes quickly suffered from structural problems to the exterior parts of the domes resulting from design and construction flaws. *Compl.* ¶¶ 2-7, 61. Northview alleges many problems with the domes, including problems with the roof, beams, rebars, walls, pressurization, mold, corrosion, insulation, gutter system, water collection, and duct work. *Id.* ¶ 61. Northview concluded that the structural problems could not be practicably fixed – the dome builders attempted different methods of repair to no avail. *Id.* ¶ 63. The structural problems grow worse with time and will lead to the eventual collapse of the roof. *Id.* ¶ 64. Northview also cites problems with layout mistakes, unpaid contractors, damage to the church's reputation, and decreased donations. *Id.* ¶ 61.

On February 25, 2010, Northview filed its Complaint in the Northern District of Texas against the dome builders, architects, and engineers for breach of contract and professional malpractice (Dkt. 2). The Texas Court dismissed the claims against the engineers from Idaho for lack of personal jurisdiction (Dkt. 1) and transferred only the claims against the Idaho engineers to this Court.

## ANALYSIS

### 1. Motion to Dismiss Engineering Malpractice Claims

The Defendant Idaho engineers move to dismiss the engineering malpractice claim solely on the grounds that Northview's claim is barred by Idaho's economic-loss rule, which bars tort recovery for purely economic harm. Northview argues that Alabama law, and not Idaho law, should apply for purposes of this Motion under Idaho's choice of law rules. Alabama law allows a plaintiff to recover for purely economic damage for most tort claims. Under Idaho law, the claim would be barred unless Defendants fall under the "special relationship" exception.

Northview's alleged damages include the 1) amount paid to dome builders, 2) amounts paid to other contractors for completing the domes, 3) costs to compensate still unpaid local contractors, 4) mitigation costs, 5) costs necessary to obtain substitute performance and obtain benefit of bargain, 6) damages occasioned by delay in completion of building project, 7) decline in donations, 8) devaluation of the real property of the church, 9) injury to the church's and the Pastor's reputation, 10) administrative costs, 11) attorney's fees, and 12) other damages.

#### A. *Legal Standard*

Providing too much in the complaint may be fatal to a plaintiff. Dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery. *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (stating that "[i]f the pleadings establish facts compelling a decision one way,

that is as good as if depositions and other . . . evidence on summary judgment establishes the identical facts").

Under Rule 12(b)(6), the Court may consider matters that are subject to judicial notice. *Mullis v. United States Bank*, 828 F.2d 1385, 1388 (9th Cir. 1987). The Court may take judicial notice "of the records of state agencies and other undisputed matters of public record" without transforming the motions to dismiss into motions for summary judgment. *Disabled Rights Action Comm. v. Las Vegas Events, Inc.,* 375 F.3d 861, 866 (9th Cir. 2004).

The Court may also examine documents referred to in the complaint, although not attached thereto, without transforming the motion to dismiss into a motion for summary judgment. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). However, mere mention of the existence of a document is insufficient to incorporate its contents; the Complaint must rely on the document or allege the contents of the document. *Coto Settlement v. Eisenberg*, 593 F.3d 1030, 1038 (9th Cir. 2010).

Northview's Complaint alleges the existence of contracts between the Defendant engineers and the dome builders to provide design and engineering services for the Northview project. In support of their Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. 3), Defendants attached two documents (Dkt. 5). The first, entitled "Electrical Consulting Services Agreement," is dated June 14, 2006 and signed by representatives from LPDJ and Mechanical System Solutions Group. The second, entitled "Structural Consulting Services Agreement," is dated August 6, 2006 and signed

by representatives from LPDJ and Engineering Structural Solutions, a previously assumed business name for E&D. Article I of both agreements describes the project as "new sanctuary and supporting facilities for the Northview Christian Church in Dothan, Alabama." Because these contracts between LPDJ, part of the dome builders, and Defendant engineers are relied upon in the Complaint and their contents alleged in the Complaint, they are properly considered for the Motion to Dismiss. *See Coto*, 593 F.3d at 1038. [1]

### B. *Choice of Law*

A federal court sitting in diversity must apply the forum state's choice of law rules to determine the controlling substantive law. *Fields v. Legacy Health System*, 413 F.3d 943, 950 (9th Cir. 2005). Idaho applies the "most significant relation test" as set forth in the *Restatement (Second) Conflict of Laws* § 145 to determine the applicable law. *Grover v. Isom*, 137 Idaho 770, 53 P.3d 821, 823-24 (2002). In tort cases, courts must consider the following facts in making their determination: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Id.* at 824 (citing *Seubert Excavators, Inc. v. Anderson Logging Co.*, 126 Idaho 648, 889 P.2d 82, 85 (1995)). The most important factor is where the injury occurred. *Id.* (internal citation

---

[1] At oral argument on November 1, 2010, the parties agreed that the Court may consider the two contracts.

omitted).

The policy concerns which guide the conflicts determination are:

    a)     the needs of the interstate and international systems,

    b)     the relevant policies of the forum,

    c)     the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

    d)     the protection of justified expectations,

    e)     the basic policies underlying the particular field of law,

    f)     certainty, predictability, and uniformity of result, and

    g)     ease in the determination and application of the law to be applied.

*Grover*, 53 P.3d at 824.

### (1) *Place where the injury occurred*

Northview alleges injury to the physical church structure in Alabama. Defendants argue first that the injury was the defective design or consulting work itself, and that the injury occurred in Idaho because the work took place in Idaho. Alternatively, Defendants argue that because their designs were delivered to and implemented by LPDJ in Utah, the injury took place in Utah.

Defendant's argument is unconvincing. As pled in the Complaint, the ultimate injury resulting from Defendants' actions is the financial loss to Northview flowing from

structural problems with the two domes. Although work took place in Idaho, the Defendants knew and intended that their work would be used as part of the construction in Alabama pursuant to the consulting agreement. Thus, the injury here is Northview's economic loss due to the structural problems on the physical domes in Alabama and this factor weighs in favor of applying Alabama law.

(2) *Place where the conduct causing the injury occurred*

Northview alleges that Defendants produced defective designs, failed to provide Northview with designs, and failed to evaluate the designs. Defendants maintain that all of the design and engineering work was done in Idaho and sent to LPDJ in Utah. The Complaint contains no indication that the Defendants conducted any of the design or evaluation work in Alabama. This factor weighs in favor of applying the law of Idaho.

(3) *Domicile, residence, place of incorporation, and place of business of the parties*

Defendants claim that the parties involved are the contracting parties: the Idaho engineers and LPDJ. Northview argues that it was the third-party beneficiary of the agreements and that duties were also owed to it by Defendants.

The agreements between LPDJ and the two Defendants expressly contemplated services performed on behalf of the Alabama church project, and Northview should therefore be considered as an intended beneficiary of the contract for purposes of this

analysis.[2]  Therefore, the parties to this claim include the defendants domiciled or incorporated in Idaho, a party from Utah, and a party incorporated in Alabama.  Because the parties have ties to three different states, this factor does not weigh in favor of applying the law of any particular state.

(4) *The place where the relationship is centered*

Defendants argue that the relationship is centered in Utah, where the designs were sent, or in Idaho, where the contracted-for services were performed, and not in Alabama because the Defendants did not have a relationship with Northview.  While the Court understands that modern-day engineering work is not necessarily performed on-site, the agreements between LPDJ and the two Defendants involved specific services for the Alabama Church project.  Defendants' argument might carry more weight if they provided LPDJ with general designs or services instead of project-specific services for Northview.  However, the agreements here are project-specific.

Further, both agreements were signed by representatives licensed in Alabama. LPDJ had an architect licensed in Alabama sign both agreements, and E & D had an engineer licensed in Alabama sign the agreement.

In light of all the facts, the relationship between the parties was centered in Alabama.  Although the contracts were not signed by the Alabama party, the contracts all

---

[2] The Court's observation that Northview was the intended beneficiary of the contract is limited to its observation in the context of the choice of law issue.   The Court will, in all likelihood, need to address that issue in more depth in resolving Northview's argument that it was an intended third-party beneficiary under the contracts and can therefore pursue contract remedies against the defendants. Its conclusion here, will not affect that analysis.

concerned the same project for the Alabama party. Therefore, this factor weighs in favor of applying Alabama law.

### (5) *Policy Considerations*

The forum has a clear interest in applying its laws to entities incorporated in the state and granting them the protection of the forum's laws. *See Grover*, 53 P.3d at 824. Here, the state of Idaho has a clear interest in protecting its citizens and corporations from liability for purely economic harm. Additionally, the interest of justifiable expectations also weigh in favor of applying Idaho law to a company incorporated and doing business in Idaho. *See id.*

However, the policies underlying negligence law strongly weigh in favor of Alabama law: "The basic policy of negligence law is to allow a person to recover from injury proximately caused by another's violation of a duty of reasonable care." *Grover*, 53 P.3d at 824 (quoting *DeMeyer v. Maxwell*, 103 Idaho 327, 647 F.2d 783 (Ct. App. 1982)). While the place of injury does not always control what law is applied, the general rule is that a victim should recover under the system in the place where the injury occurred. *Grover*, 53 P.3d at 824. Applying Alabama law better serves the policy purposes of predictability, certainty, and ease of application. *See id.*; *DeMeyer*, 647 P.2d at 786

Idaho courts have discounted the place of injury in cases where a party's presence in a state was simply "fortuitous" – for example, when citizens drive through one state *en route* to another. *See DeMeyer*, 647 P.2d at 786. However, in cases where the parties

purposefully perform business in a particular state, the place of injury cannot be said to be merely fortuitous. *See Grover*, 53 P.3d at 824. While Defendants may not have actually delivered designs to Alabama, participated in actual construction in Alabama, or communicated with the client in Alabama, their designs and engineering consulting services were purposefully intended for the Alabama project pursuant to their agreement with LPDJ.

Additionally, Alabama has a strong interest in protecting the rights of its citizens and corporations who are injured.

In light of all of the "most significant relation test" – with emphasis on the place the injury occurred – and the policy considerations, the facts weigh in favor of applying Alabama law. Therefore, the Court will apply Alabama law to Defendants' Motion to Dismiss the Engineering Malpractice Claim.

### C. *Economic-Loss Rule*

The economic-loss rule is a doctrine that bars recovery for some forms of purely economic injury in tort. *Restatement (Third) of Torts* § 21. In Alabama, the rule applies only to damage caused by a "product" under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD) that governs products liability cases in Alabama: "A plaintiff's AEMLD claim that a product is defective is limited to a contractual recovery when the evidence shows that the defect caused injury to only the product and to no other property." *Vesta Fire Ins. Corp. v. Milam & Co. Constr.*, 901 So.2d 84, 106-07 (Ala. 2004).

A recent Alabama Supreme Court case rejected an attempt to analogize a commercial construction project to a products liability action. In *Public Bldg. Authority v. St. Paul Fire and Marine Ins. Co.*, the Alabama Supreme Court faced the question of whether the economic-loss doctrine also barred the owner of real property from asserting tort claims against various subcontractors if the only alleged damage from the defective condition caused by the subcontractors was to the property itself. 2010 WL 3937962, at *12 (Ala. Oct. 8, 2010). The court found clear legal precedent controlling the situation presented and saw no reason to apply the economic-loss rule to tort claims in a commercial construction context. *Id*. at *13 (reaffirming that the proper inquiry for tort claims arising from commercial construction is whether there is a duty owed by a party not in privity with the plaintiff).

Therefore, under Alabama law, Northview's claim is not barred by the economic-loss rule and Defendants' Motion to Dismiss on that ground is denied.

### 2. Motion for More Definite Statement

Defendants also move pursuant to Federal Rule of Civil Procedure 12(e) for a more definite statement of Northview's claims. Defendants argue that Northview's malpractice and breach of contract claims are insufficiently pled because Northview does not indicate which claims are brought against which Defendant, does not specify which problems in the construction are due to which Defendant, and does not attribute specific acts or omissions to specific Defendants. In their Motion, Defendants list nine specific areas where they seek more particularity.

**MEMORANDUM DECISION AND ORDER - 13**

### A. *Legal Standard*

Rule 12(e) allows a party to move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. Fed. R. Civ. P. 12(e). A court's Rule 12(e) analysis is also informed by whether a plaintiff's complaint complies with Rule 8(a) – whether the Complaint pleads "a short statement of the elements of his claims, identifying the transactions or occurrences giving rise to the claim and elements of the prima facie case." *Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000); *see also Hearne v. Welch & Allan*, 2006 WL 22184, at *2 (D. Idaho Jan. 4, 2006) ("[T]o determine whether Defendants are entitled to a more definite statement of the complaint . . . the Court must address whether Plaintiff's Complaint complies with Rule 8(a)").

Motions for a more definite statement are not favored by the courts since pleadings are only required to fairly notify the opposing party of the nature of the claim. *A.G. Edwards & Sons, Inc. v. Smith*, 736 F.Supp. 1030, 1032 (D. Az. 1989). A motion is only proper when a party is unable to determine the issues he must meet; it should not be used to test an opponent's case. *Id.*

### B. *Breach of Contract Claim*

To allege a breach of contract, the plaintiff must show "the making of a contract, an obligation assumed by the defendants, and their breach or failure to meet such obligation." *Reynolds v. American Hardware Mut. Ins. Co.*, 115 Idaho 362, 766 P.2d 1243 (1988) (citation omitted); *see also Southern Medical Health Systems, Inc. v.*

*Vaughn*, 669 So.2d 98, 99 (Ala. 1995) ("In the ordinary breach of contract action, the claimant must prove: 1) the existence of a valid contract binding the parties in the action, 2) his own performance under the contract, 3) the defendant's non-performance, and 4) damages").

Northview alleges that it was the intended third-party beneficiary to valid contracts between Defendants and the dome builders to provide engineering services used to design the dome project to meet industry standards, that it paid the dome builders for their construction of the exterior of the domes, that the Defendants breached the contracts by failing to provide perform tasks to industry standard, among other things, and that Defendants' breach caused Northview's damages. *Compl*. ¶¶ 53, 141-46. Therefore, Northview's complaint has stated the essential elements for a breach of contract claim and provided sufficient information for Defendants to respond. Further, Northview adequately alleges that the intent to benefit it as third-party beneficiary was expressed in the contracts between Defendants and the dome builders. *Id*. ¶¶ 141-142.

Defendants' Motion is premised on the fact that Northview failed to identify specific contracts, identify the specific parties involved in each contract, and identify the specific parts of the project addressed by each contract. However, this level of particularity is not necessary to state a claim for breach of contract or for the Defendants to respond to the Complaint. Northview identifies the parties generally as "engineers" or "dome builders" because that is how Northview allegedly conducted business with the various entities involved. But Northview also lists the specific parties in each group in its

Complaint.

Each Defendant can certainly respond to allegations that it entered into contracts involving the Northview construction project with any of the companies identified as "dome builders" and that the contracts involved providing engineering or design services. Each Defendant can also respond to the allegation that it breached the contract by failing to perform its duties for the Northview project. Thus, the lack of specificity in Northview's Complaint in regard to the contracts does not warrant a court-ordered amendment.

### C. *Malpractice Claim*

In a negligence action, the plaintiff must show that a duty existed, that the defendant breached the duty, and that the breach caused the plaintiff's injury. *Holt v. Lauderdale County*, 26 So.3d 401, 403 (Ala. 2008). *Cf. O'Guin v. Bingham County*, 142 Idaho 49, 122 P.3d 308, 311 (2005) (elements of negligence include duty, breach of duty, causation, *and* actual damage).

Northview claims that each of the Defendants had a duty to Northview due to their professional status, their contractual obligation to provide engineering services to the project, and their contractual relationship with one of the dome builders with Northview as the third-party beneficiary. *Compl.* ¶ 135. Northview also claims that each of the Defendants breached their duty of care to Northview when their performance deviated from professional standards. *Id.* ¶¶ 136-37. Northview claims that this breach of duty was the proximate cause of its actual monetary damages. *Id.* ¶¶ 138-39. Northview has

**MEMORANDUM DECISION AND ORDER - 16**

sufficiently pled the elements of negligence against each Defendant.

Defendants' reliance on *McHenry v. Reene*, 84 F.3d 1172 (9th Cir. 1996), is misplaced. In *McHenry*, the plaintiff's civil rights claims were "set out in a single sentence thirty lines long, alleging numerous and different violations of rights, without any specification of which of the twenty named defendants or John Does is liable for which of the wrongs." 84 F.3d at 1174. The Ninth Circuit found that the plaintiff did not clearly and concisely explain which civil rights allegations were relevant to which defendants. *Id*. at 1175.

This is not a case where Northview has brought many incomprehensible claims against a long list of Defendants. This case involves only two claims against each of the six Idaho engineers. Northview brings identical allegations and claims against each of the Defendants. Northview's factual allegations are clear and comprehensible. There is sufficient information in the Complaint for Defendants to respond to Northview's negligence claim.

As discussed above, although Northview used general group descriptions, it also listed the specific parties included in each group. Northview's Complaint clearly alleges a breach of duty owed to it by each Defendant. Each Defendant can certainly respond to allegations that it owed Northview a duty of care and whether or not its actions constituted a breach of any alleged duty. No additional clarification is needed for each Defendant to respond.

Because Northview's Complaint allows Defendants to determine what claims are

being brought against each of them and respond to the allegations, Defendant's Motion for a More Definite Statement is denied. [3]

### 3. Motion to Strike

Finally, Defendants move to strike the Declaration of Pete Pierce, Jr. (Dkt. 47) on grounds that Pierce lacks personal knowledge of the facts contained in his declaration and that his testimony is speculative. Northview attached Pierce's Declaration in support of its Response to Defendants' Motion to Dismiss. Pierce, the business manager for Northview Church, offered testimony as to Defendants' contacts with Alabama.

On a motion to dismiss, the court properly considers the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint where authenticity is not contested, and matters where the court takes judicial notice. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705, 706 n.4 (9th Cir. 1998), *rev'd by statute on other grounds*. Affidavits and declarations are not allowed as pleading exhibits unless they form the basis of the complaint. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Here, Northview's Complaint makes no mention of Pierce, the Declaration, or the facts contained in the Declaration. Pierce's Declaration, obviously, did not form the basis

---

[3] The Court recognizes that the Complaint was filed initially against entities and individuals no longer a part of this suit, involved additional claims against the additional defendants, and has not been amended since the case was moved to Idaho. While the Court finds that the Complaint satisfies federal pleading requirements, the Court expects parties to work together during discovery to clarify Northview's claims and narrow the parties involved. The Court is willing to give leeway regarding the number of interrogatories made by parties in order to facilitate this process.

of Northview's Complaint. Nor did the Court take judicial notice of the facts in the Declaration. Therefore, the facts contained in the Declaration could not be properly considered – and were not considered – in denying the Motion to Dismiss. Defendant's Motion to Strike is therefore denied as moot.

## ORDER

**IT IS ORDERED:**

1. Defendant's Motion to Dismiss Engineering Malpractice Claim (Dkt. 40) is **DENIED**.

2. Defendant's Motion for a More Definite Statement (Dkt. 38) is **DENIED**.

3. Defendant's Motion to Strike (Dkt. 50) is **DENIED AS MOOT**.

DATED: **November 8, 2010**

Honorable B. Lynn Winmill
Chief U. S. District Judge